COURT OF APPEALS OF VIRGINIA

Present: Judges Frank, Petty and Senior Judge Haley
Argued at Alexandria, Virginia

UNPUBLISHED

KENNETH WAYNE ROMICK

MEMORANDUM OPINION[*] BY
JUDGE JAMES W. HALEY, JR.
v.      Record No. 1580-12-4                                NOVEMBER 19, 2013

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF WARREN COUNTY
Dennis L. Hupp, Judge

Peter K. McDermott, Assistant Public Defender, for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Kenneth Wayne Romick was convicted of indecent exposure, third offense, in violation of

Code §§ 18.2-387 and 18.2-67.5:1, and he argues the evidence was insufficient to prove that he

intentionally made a display of his private parts and that such display was obscene. We agree that

such display was not obscene and reverse and dismiss the indictment.

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26

Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438,

443, 358 S.E.2d 415, 418 (1987)). So viewed, the evidence proved that at approximately 6:00 p.m.

on March 21, 2011, Investigator Smoot investigated a suspicious person at an abandoned motel.

Smoot arrested Romick and transported him to the station. Romick was dressed in a woman's white

nightgown that reached the top of his knees. Later that evening, Smoot found a car registered to

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

"Mary Romick" parked behind a Holiday Inn. The Holiday Inn was approximately 100 feet from the abandoned motel where Smoot had encountered Romick earlier that day. At approximately 7:00 p.m. on March 22, 2011, Smoot returned to the Holiday Inn and noticed that Mary Romick's car had not moved. When Smoot returned at approximately 9:30 p.m., he saw that Mary Romick's car was no longer parked at the Holiday Inn. Smoot confirmed that Romick had been released from jail, and Smoot searched for the car because he knew Romick did not have a valid driver's license.

At approximately 12:25 a.m. on March 23, 2011, Smoot saw Mary Romick's car in the parking lot of a Hampton Inn. As Smoot exited his car, he saw Romick lying in the driver's seat, wearing the same white nightgown, and the nightgown was pulled up to his navel area, exposing Romick's genitals.

In the two to three seconds that it took Smoot to walk to the car, Romick did not cover himself. As Smoot approached Romick's car, Smoot could not tell if Romick was aroused. After Smoot told Romick "put some clothes on," Romick pulled down the nightgown, picked up a pair of pants, and put them on.

Romick testified when he was released from jail, he was wearing coveralls over the nightgown and his parents drove him to the car registered to Mary Romick. Romick testified he called a few friends, but no one was available to help him and he decided to drive home. Romick testified he drove to a fast-food restaurant, realized he had no money, and decided to drive further back in the lot to find a parking space to sleep. Romick testified he removed the coveralls because he was warm, listened to the radio, made phone calls, and saw Smoot pull into the parking lot. Romick testified after Smoot stopped his car, he leaned back further to find his pants in the passenger seat, and had his pants in his hands when Smoot arrived at his window. Romick explained that his nightgown was above his waist because he lifted his leg to put on the pants.

In finding Romick guilty, the trial judge found that Romick parked in a hotel parking lot, wearing only a woman's nightgown pulled up to his navel clearly exposing his genitals, and his pants were on the seat next to him. The trial judge found that "[t]he whole set of circumstances indicates it is an intentional act and what other purpose could there be but to appeal to his prurient interest."

Code § 18.2-387 provides in part, "Every person who intentionally makes an obscene display or exposure of his person, or the private parts thereof, in any public place, or in any place where others are present, or procures another to so expose himself, shall be guilty of a Class 1 misdemeanor."

"Code § 18.2-387 requires proof that defendant intentionally made an obscene display or exposure of his person, or the private parts thereof, in any public place." Hart v. Commonwealth, 18 Va. App. 77, 79, 441 S.E.2d 706, 707 (1994).

Assuming without deciding that Romick's display of his private parts was intentional, such display was not obscene.

> The word "obscene" . . . shall mean that which, considered as a whole, has as its dominant theme or purpose an appeal to the prurient interest in sex, that is, a shameful or morbid interest in nudity, sexual conduct, sexual excitement, excretory functions or products thereof or sadomasochistic abuse, and which goes substantially beyond customary limits of candor in description or representation of such matters and which, taken as a whole, does not have serious literary, artistic, political or scientific value.

Code § 18.2-372.

The "obscenity" element of Code § 18.2-387 may be satisfied when: (1) the accused admits to possessing such intent, Moses v. Commonwealth, 45 Va. App. 357, 360, 611 S.E.2d 607, 608 (2005) (*en banc*); (2) the defendant is visibly aroused, Morales v. Commonwealth, 31 Va. App. 541, 543, 525 S.E.2d 23, 24 (2000); (3) the defendant engages in masturbatory behavior, Copeland v. Commonwealth, 31 Va. App. 512, 514, 525 S.E.2d 9, 10 (2000); or (4) in other circumstances when

- 3 -

the totality of the circumstances supports an inference that the accused had as his dominant purpose a prurient interest in sex, Hart, 18 Va. App. at 80, 441 S.E.2d at 707-08. The mere exposure of a naked body is not obscene. See Price v. Commonwealth, 214 Va. 490, 493, 201 S.E.2d 798, 800 (1974) (finding that "[a] portrayal of nudity is not, as a matter of law, a sufficient basis for finding that [it] is obscene").

"'On appeal, we must make an independent determination of the constitutional issue of obscenity, which is a mixed question of law and fact.'" Lofgren v. Commonwealth, 55 Va. App. 116, 119-20, 684 S.E.2d 223, 225 (2009) (quoting Allman v. Commonwealth, 43 Va. App. 104, 110, 596 S.E.2d 531, 534 (2004)). The Court must examine the particular circumstances of each case to determine whether something is obscene. Id. at 121, 684 S.E.2d at 226.

In this case, Romick did not admit to having an obscene intent, he was not visibly aroused, and there was no evidence he was masturbating. Thus, Romick's actions were only obscene if the totality of the circumstances support an inference that he had as his dominant purpose a prurient interest in sex.

Our decision in Hart is instructive as to circumstances proving the type of behavior that has a dominant purpose a prurient interest in sex. In Hart, the defendant entered a store, asked an employee for help, and when the employee looked up, she saw that the defendant had "dropped his pants" and was wearing a "skimpy G-string." Hart, 18 Va. App. at 78, 441 S.E.2d at 706. The G-string covered the defendant's penis, but the employee could see the outline of the defendant's penis, his buttocks, and the remaining pubic area. Id. The defendant stated his shorts just kept falling off, modeled his outfit for the employee, told the employee he searched all over town for the outfit, stated he like to wear it or nothing at all when he went out on his boat, and asked the employee what she thought of his outfit. The defendant also stated the shorts "were great" because they attached with velcro, which "gave easy access to women who wanted him." Id. at 78, 441

- 4 -

S.E.2d at 706-07. In affirming the conviction for indecent exposure, this Court found that the defendant's statements and his actions clearly established his actions "had as their dominant purpose an appeal to the prurient interest in sex as defined in the Code." Id. at 80, 441 S.E.2d at 707.

Unlike the defendant in Hart, Romick made no sexual statements to Smoot and Romick did not try to expose himself to a particular individual. Although Romick was parked in the parking lot of the Hampton Inn, there was no foot traffic in the area, it was after midnight, and he was not parked near the front door of the business. Romick was alone in the car, he was not "modeling" his outfit for another individual, and, as soon as Smoot spoke to him, Romick pulled down the nightgown and grabbed his pants. Although Romick's behavior was bizarre, the evidence merely proved nudity and was insufficient to prove Romick's actions had as its dominant purpose a prurient interest in sex.

Based upon the foregoing, Romick's conviction for indecent exposure, third offense, is reversed and the indictment is dismissed.

Reversed and dismissed.